UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAMES HARPER ) | |
| 16000 Dusty Lane ) | |
| Accokeek, MD 20607, ) | Civil Action No. _____ |
| ) | |
| *Plaintiff*, ) | |
| ) | |
| v. ) | |
| ) | |
| JOHN E. POTTER ) | |
| Postmaster General ) | |
| U.S. Postal Service ) | |
| 475 L'Enfant Plaza, SW ) | |
| Washington, DC 20260 ) | |
| ) | |
| *Defendant.* ) | |
| _____) | |

## COMPLAINT
**(Employment retaliation in violation of the Civil Rights Act)**

1. This action is brought by a former employee of the U.S. Postal Service who suffered through the anthrax attack at his workplace (the Brentwood facility) and became outspoken about racial discrimination against black postal workers generally and him in particular.  He made public statements, informal complaints and opposition, and filed formal of charges of discrimination.  Thereafter, he became targeted by his superiors for unfair treatment.  Ultimately, he was unfairly disciplined under circumstances that caused him severe emotional harm and left him unable to continuing working at the Post Office or in any fulltime position.

**Parties**

2. Plaintiff James Harper is a resident of the state of Maryland and former employee of the U.S. Postal Service.  He worked at Defendant's worksites in the District of Columbia.

3. Defendant John E. Potter is the Postmaster General of the United States, and is sued in his official capacity.

**Jurisdiction and Venue**

4. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 39 U.S.C. § 409(a).

5. Venue is proper pursuant to 28 U.S.C. § 1391 because all Defendants reside in the District of Columbia and because the events giving rise to these claims occurred in the District.

**Facts Common to All Counts**

6. Mr. Harper started working at the Postal Service in 1988, and his career was essentially without incident until the terrifying set of events surrounding the discovery of Anthrax in October 2001 at the Brentwood facility where he worked. A man that he worked side-by-side with on the same machine for years, and who was a close person friend, died from exposure to Anthrax.

7. Mr. Harper was deeply effected by these events, and by what he perceived to be mismanagement and racism in the response to these events.

8. Mr. Harper was quoted in various broadcast and print media as he advanced his complaints.

9. For example, Mr. Harper complained that when white employees on Capitol Hill were thought to be in danger, the response was swift and thorough; but black workers at the Post Office were left to work in contaminated facilities for days.

10. The Postal Service and Mr. Harper's supervisors were aware of his criticism of the treatment of postal workers, which included allegations of racism.

11. The alleged discriminating official, Ms. Lydia Hembry, herself links Mr. Harper's complaints of retaliation to his public statements.

12. Thereafter, Mr. Harper was subjected to unjustified intense scrutiny and harassment, including a series of disciplinary actions that were ultimately rescinded. He was not always certain of the reasons for this mistreatment at the time, sometimes characterizing it generically as discrimination or retaliation.

13. Mr. Harper met with Supervisor Lydia Faye Hembry, Manager Melvin Tucker, and Manager Ella Vick on or about September 23, 2002. During this meeting, Mr. Harper told the others present that he intended to "file an EEO."

14. Manager Tucker acknowledged Mr. Harper's statement, announcing to the others present that the issues would be addressed through the EEO process, and ending the meeting.

15. Thereafter, the harassment and unjustified intense scrutiny of Mr. Harper by Ms. Hembry, in particular, became nearly unbearable for Mr. Harper.

16. On October 1, 2002, Mr. Harper was so distraught by the treatment he was receiving from his supervisors that he felt compelled to fill out a "1767 Form." This form is entitled "Report of Hazard, Unsafe Condition or Practice."

17. This 1767 form constituted a complaint of and opposition to harassment of and retaliation against Mr. Harper.

18. When Ms. Hembry saw Mr. Harper completing the 1767 form, she instructed Mr. Harper to return to work and to complete this form during his lunch break.

19. Mr. Harper told Ms. Hembry that he would do as instructed, but would note Ms. Hembry's instruction on the form when he competed it during his break. He then immediately returned to work.

20. In addition to completing a 1767 Form, Mr. Harper entered pre-complaint counseling at Defendant's Equal Employment Opportunity office on October 2, 2002, alleging that he had been subjected to harassment by Ms. Hembry.

21. On October 4, 2002, Ms. Hembry issued Mr. Harper a seven-day suspension.

22. By its terms, the October 4, 2002, suspension was based on the above-identified events of October 1, 2002, and on a July 26, 2002, Letter of Warning. Reference to and reliance upon this Letter in the October 4 action was improper because the Letter had been rescinded two months earlier, on August 4, 2002.

23. The October 4 seven-day suspension likewise was rescinded in a grievance resolution dated November 13, 2002.

24. The act of retaliation on October 4, 2002, severely effected Mr. Harper.

25. On October 4, shortly after Ms. Hembry gave Mr. Harper a letter stating that he was to be suspended for seven days, Mr. Harper experienced physical manifestations of extreme anxiety. He told his manager that he needed medical attention and Manager Tucker drove Mr. Harper to the hospital.

26. The hospital documented his chest pains, headache, dizziness, and other physical symptoms.

27. The hospital concluded that "[y]our exam shows that an important part of your present problem is anxiety and emotional distress."

28. The doctor ordered Mr. Harper to stay away from work for the following two days, October 4 and 5, 2002.  He was already scheduled to be off work on October 6 and 7.

29. Even days after the notice of suspension, however, Mr. Harper continued suffering serious physical manifestations relating to his anxiety over this act of retaliation.  He sought medical attention from another doctor on October 7, who ordered Mr. Harper to stay away from work until October 16.

30. Mr. Harper became unable to function normally as a result of the unlawful retaliatory conduct by management at the Postal Service.  He fears that the Postal Service is "out to get" him.  He has difficulty sleeping.  He is unable to focus on other matters, because he dwells on the retaliatory misconduct.  Mr. Harper obtained counseling from Phillip Lucas, LICSW.  He is still receiving psychiatric treatment from Dr. Ralph Wadeson, MD.

31. Mr. Harper has been unable to perform any significant work since, and as a result of, these events.

**Claim**

### COUNT I – RETALIATION IN VIOLATION OF THE CIVIL RIGHTS ACT

32. Plaintiff incorporates by reference the allegations in all preceding paragraphs as if restated fully herein.

33. Plaintiff received a Notice of Final Action within ninety days prior to the filing of this matter.

34. Plaintiff's actions described above of verbally opposing and complaining of racial discrimination, complaining of discrimination and retaliation, and

filing charges with Defendant's Equal Employment Opportunity Office were protected activities under the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*

35. Defendant imposed adverse employment actions against Plaintiff as described in this Complaint.

36. Plaintiff's engagement in protected activities was a substantial contributing factor in the Defendant's decision to take the above-described actions.

37. As a consequence of Defendant's actions, Plaintiff has suffered harm, including lost wages and benefits, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other pecuniary and nonpecuniary losses.

**Prayer for Relief**

38. WHEREFORE, Plaintiff respectfully requests that this Honorable Court grant the following relief:

    a. entry of a declaratory order that Defendant's actions violated Plaintiff's rights under the Civil Rights Act;

    b. entry of a permanent injunction that Defendant shall not retaliate against Plaintiff for his protected activities;

    c. an award for compensatory damages, lost wages and benefits in an amount appropriate to the proof adduced at trial;

    d. reasonable attorney's fees;

    e. costs; and

    f. such other and further relief as to this Honorable Court appears just and proper.

**JURY TRIAL DEMANDED**

39. Plaintiff demands trial by jury on all issues so triable.

-7-

        Respectfully submitted,


        _____

        Zachary Wolfe (DC Bar No. 463548)
        People's Law Resource Center
        1725 I Street, NW, Suite 300
        Washington, DC 20006
        (202) 265-5965 – telephone
        (202) 250-6712 – facsimile