Exhibit 3

050729A.TXT

1

```
 1                  UNITED STATES POSTAL SERVICE
 2   IN THE MATTER OF:          )
 3   JAMES HARPER,              )
 4              Complainant,    )
 5                              ) EEOC No. 100-2004-00119X
 6   v.                         )
 7                              ) Agency No. 1K-206-0004-03
 8   JOHN E. POTTER,            )
 9   POSTMASTER GENERAL,        )
10   UNITED STATES POSTAL SERVICE, )
11              Agency.         )
12                              Suite 600
13                              Heritage Reporting Corporation
14                              1220 L Street, N.W.
15                              Washington, D.C.
16                              Friday,
17                              July 29, 2005
18          The parties met, pursuant to the notice, at
19   3:05 p.m.
20          BEFORE:  HONORABLE KURT C. HODGES
21                   Administrative Judge
22          APPEARANCES:  (Via Telephone)
23          For the Complainant:
24          ZACHARY I. WOLFE, Esquire
25          People's Law Resource Center
26          1725 I Street, N.W., Suite 300
27          Washington, D.C.  20006
28          (202) 265-5965
29          For the Agency:
30          ANDREW A. CHAKERES, Esquire
31          United States Postal Service
32          400 Virginia Avenue, S.W.
33          Washington, D.C.  20024
34          (202) 314-6802
```

2

```
 1                P R O C E E D I N G S

 2                                          (3:05 p.m.)

 3          JUDGE HODGES:  We have convened in the

 4   matter of James Harper v. John E. Potter, Postmaster

 5   General, United States Postal Service, hereinafter
```

050729A.TXT
```
 6   referred to as EEOC Case No. 100-2004-00119-X.

 7              Present on the telephone line today are

 8   Complainant's counsel, Mr. Wolfe; Agency counsel, Mr.

 9   Chakeres; and the court reporter and myself,

10   Administrative Judge Hodges.

11              The court reporter is instructed to send the

12   original and two copies of the bench decision and

13   hearing transcripts to the Administrative Judge.   The

14   Administrative Judge will then distribute those to the

15   parties upon receipt.

16              The Complainant filed a formal complaint of

17   discrimination on December 13 in the year 2002

18   alleging discrimination and retaliation for protected

19   activity in violation of Title VII of the 1964 Civil

20   Rights Act as amended, hereinafter referred to as

21   Title VII.

22              Complainant specifically alleges that he was

23   placed on a seven-day suspension in retaliation for

24   filing a prior EEO complaint against his supervisor,

25   Ms. Hembry, spelled H-E-M-B-R-Y, during October 2002,
```

                                                          3
```
 1   as well as his involvement in Brentwood Exposed, an

 2   organization of African-American employees who

 3   publicly spoke out against the Agency's treatment of

 4   them following an anthrax incident that occurred

 5   during 2001.

 6              Pursuant to 29 C.F.R., Section 1614.109, a

 7   hearing in the above-captioned matter was held on

 8   July 21, 2005, before the undersigned.   The
```
                          Page 2

050729A.TXT

9      Complainant and two witnesses testified.  I now make
10     the following findings of fact:
11          (1)  Complainant, an African-American male,
12     is employed as a mail processor at the U.S. Postal
13     Service in Gaithersburg, Maryland.  Complainant's
14     first line supervisor during the relevant time period
15     was Ms. Hembry, an African-American female.
16          (2)  On September 30, 2002, Complainant
17     requested to see a shop steward and was allowed to go
18     to the union office at approximately 12:00 a.m. on
19     October 1, 2002.  Complainant met with Mr. Robinson, a
20     union member.  At approximately 12:30 a.m., Ms. Hembry
21     arrived at the union office and told Complainant that
22     Mr. Tucker indicated that he only had 30 minutes and
23     that he needed to take a break and return to work.
24          (3)  Complainant took an approximate 15
25     minute break and returned to work at the flat sorter

                                                            4

1      machine at approximately 1:00 a.m.
2          (4)  Later that evening, Complainant
3      completed a Report of Hazard, Unsafe Condition or
4      Practice report, otherwise known as a Form 1767,
5      indicating that Ms. Hembry exhibited an aggressive
6      manner and attitude and that the harassment was
7      causing him undue stress.  Complainant indicated that
8      his work area was unsafe and recommended that Ms.
9      Hembry take an anger management course.
10          (5)  On October 2, 2002, Complainant went to
                        Page 3

050729A.TXT

11    the EEO office at the Southern Maryland Post Office in

12    order to file an EEO complaint against Ms. Hembry for

13    harassment.   Upon leaving the office, he saw Mr.

14    Haney, manager of Capital Operations, who asked how he

15    was doing.   Complainant told him about the problems he

16    was having with Ms. Hembry, and he told Complainant

17    that he would talk to Mr. Martin, the plant manager of

18    Processing and Distribution, as well as Mr. Tucker.

19              (6)   On October 4, 2002, Ms. Hembry issued

20    the Complainant a notice of suspension for seven days

21    for failure to follow official instructions.   Ms.

22    Hembry indicated that she observed Complainant

23    standing in his work area not performing his duties at

24    approximately 2:20 a.m.   Also at approximately

25    3:30 a.m. she observed him sitting at a desk filling

5

1    out a Form 1767.   Ms. Hembry indicated that

2    Complainant had previously been issued a letter of

3    warming for failure to follow official instructions.

4              (7)   On October 4, 2002, Complainant

5    requested medical attention and was transported to

6    Shady Grove Hospital for treatment.   Complainant's

7    doctor ordered him to stay away from work on October 4

8    and 5 of 2002, and he was scheduled to be off work on

9    October 6 through 7, 2002.   Complainant received

10    additional medical treatment and was ordered to stay

11    away from work until October 16, 2002.

12              (8)   On December 13, 2002, Complainant filed

13    a formal complaint.

Page 4

050729A.TXT

14          In the absence of direct evidence of
15    discrimination, the allocation of burdens and order of
16    presentation of proof in a disparate treatment case
17    brought under Title VII is a three-step process.
18          First, the Complainant has the burden of
19    establishing a prima facie case of discrimination.  If
20    the Complainant meets this burden, then the burden
21    shifts to the Agency to articulate some legitimate,
22    non-discriminatory reason for the action that has been
23    challenged.  The Complainant must then prove by a
24    preponderance of the evidence that the articulated
25    reason is a pretext for intentional discrimination.

                                                        6

1           However, if the Agency articulates a
2     legitimate, non-discriminatory reason for its actions
3     the factual inquiry can proceed directly to the third
4     step of the three-step analysis, i.e., the ultimate
5     issue of whether Complainant has shown by a
6     preponderance of the evidence that the Agency's
7     actions were motivated by discrimination.
8           Ms. Hembry provided several explanations for
9     issuing Complainant the notice of suspension.  First,
10    she testified during the hearing that at approximately
11    2:00 a.m. she observed Complainant talking on his cell
12    phone instead of feeding mail into the flat sorter
13    machine.  Ms. Hembry explained that cell phone use on
14    the work room floor was prohibited and that
15    Complainant was not performing his job duties.

                    Page 5

050729A.TXT
16          She testified that she asked Complainant
17    whether he was on the cell phone, but he failed to
18    respond.  She testified that she told him, "You need
19    to get off the phone and go to work."
20          Second, she testified that at approximately
21    3:30 a.m. she observed Complainant sitting at his
22    supervisor's desk filling out a Form 1767.  Ms. Hembry
23    testified that she asked whether the safety hazard was
24    something immediate that needed to be addressed and
25    told Complainant that he needed to get back to the

                                                      7

1     machine once she determined that there was no
2     immediate danger.
3           Ms. Hembry testified that Complainant
4     responded he would return to work, but he intended to
5     note on the form that he was not given time to
6     complete it.
7           Third, Ms. Hembry testified that Complainant
8     had previously been issued a letter of warning for
9     failing to follow instructions on July 26, 2002.  She
10    explained that they utilized a progressive system of
11    discipline that was designed to stop employees from
12    engaging in prohibited behavior and that the seven-day
13    suspension was the appropriate level of discipline to
14    impose following the issuance of a letter of warning.
15          Record evidence demonstrates that
16    Complainant filed a union grievance challenging his
17    suspension and that the disciplinary action was
18    rescinded on November 13, 2002.  All records
                          Page 6

050729A.TXT

19    associated with the suspension were removed from his
20    personnel records.
21          Based upon my observation of the witness'
22    demeanor during the hearing, I find that Ms. Hembry's
23    testimony regarding Complainant's behavior on
24    October 1, 2002, is credible and that the Agency has
25    provided legitimate, non-discriminatory reasons for

8

1     issuing a notice of suspension.
2           In the face of the Employer's strong
3     justification for the adverse action, the Complainant
4     must now prove by a preponderance of the evidence that
5     the articulated reasons are a pretext for intentional
6     discrimination.
7           After careful review of the evidence
8     contained in the report of investigation and the
9     exhibits and affidavits attached therein, as well as
10    the hearing testimony, I find that Complainant has not
11    met his burden of persuasion.
12          First, I find that Complainant failed to
13    provide evidence which demonstrated that Ms. Hembry's
14    testimony regarding his behavior was not credible.
15    When questioned whether he used a cell phone on the
16    workroom floor, Complainant answered that he could not
17    recall.  Also, Complainant failed to provide evidence
18    which disputed Ms. Hembry's testimony that she had
19    observed him not performing his job duties at the flat
20    sorter machine.

Page 7

050729A.TXT

21          Complainant also failed to refute her

22     testimony that later that same evening she observed

23     him sitting at his supervisor's desk filling out a

24     hazard safety form.  When she questioned him whether

25     there was an immediate safety issue that required

9

1      attention, he failed to identify one.  Ms. Hembry then

2      directed the Complainant to get back to the machines

3      and work.  I find that Complainant did not refute Ms.

4      Hembry's testimony that this was another occasion

5      where he was failing to perform his job duties.

6          Complainant also did not provide evidence to

7      refute Ms. Hembry's testimony that there were only

8      three employees feeding mail into one flat sorter

9      machine and that his failure to perform his job duties

10     on the evening in question adversely impacted the

11     overall production because the mail needed to be

12     processed and prepared for loading onto trucks

13     scheduled to arrive within the next half hour.

14          Second, I find that Complainant did not

15     provide pretextual evidence which demonstrated a nexus

16     between the notice of suspension and his protected

17     activity.  Complainant alleged that Ms. Hembry issued

18     him the notice because of his involvement in the

19     Brentwood Exposed organization, which began in late

20     2001, as well as his EEO complaint that he filed

21     during October of 2002.

22          It is undisputed that Complainant's

23     involvement in the Brentwood organization began

Page 8

050729A.TXT

24    approximately 12 months before the notice of

25    suspension was issued.   Other than the fact that the

10

1     adverse action followed his protected activity,

2     Complainant did not provide either direct or

3     circumstantial evidence which proves that Ms. Hembry's

4     actions were based on his involvement in the Brentwood

5     organization.

6             In fact, Ms. Hembry testified credibly

7     during the hearing that her husband was also a member

8     of the Brentwood organization and that she did not

9     hold it against him.   Complainant did not provide

10    evidence to refute Ms. Hembry's testimony on this

11    point.

12            Complainant also alleged that he suffered

13    from the adverse action because he told Ms. Hembry and

14    other management officials that he intended to file an

15    EEO complaint in late September 2002 and that he filed

16    his EEO complaint against Ms. Hembry on October 2,

17    2002.

18            Ms. Hembry indicated in her affidavit that

19    she met with Complainant and Mr. Tucker, her

20    supervisor, to try and resolve issues of concern to

21    the Complainant and that she recalled that Complainant

22    informed them that he either intended to file an EEO

23    complaint or that he had already filed one.   Ms.

24    Hembry explained that Mr. Tucker ended the meeting and

25    informed Complainant that his issues would be dealt

050729A. TXT

11

1    with in his EEO complaint.

2         Documentary evidence presented during the

3    hearing demonstrate that the purpose of the meeting

4    was to address issues raised by Complainant regarding

5    Ms. Hembry's management.  This evidence demonstrates

6    that a conflict existed between Complainant and Ms.

7    Hembry before he filed his EEO complaint on October 2,

8    2002.

9         I find that Complainant did not provide any

10   additional circumstantial evidence which proved that

11   his filing of the EEO complaint was the catalyst of

12   Ms. Hembry's decision to issue the notice of

13   suspension.

14        I conclude that the Agency has articulated a

15   legitimate, non-discriminatory reason or reasons for

16   issuing the notice of suspension and that Complainant

17   did not prove by a preponderance of the evidence that

18   the articulated reasons are a pretext for intentional

19   discrimination based on his protected activity.

20        A copy of the applicable appeal rights will

21   be attached to this decision.  I would advise the

22   parties to read it carefully as there are some time

23   requirements for filing that are discussed within the

24   notice.

25        I declare this hearing closed at

050729A.TXT

12

1    approximately 3:20 p.m. on July 29, 2005.  I would

2    like to thank all of the parties and witnesses for

3    their cooperation and participation in this

4    proceeding.

5                Let's go off the record, please.

6                (Whereupon, at 3:20 p.m. the hearing in the

7    above-entitled matter was concluded.)

8    //

9    //

10    //

11    //

12    //

13    //

14    //

15    //

16    //

17    //

18    //

19    //

20    //

21    //

22    //

23    //

24    //

25    //

13

1                    REPORTER'S CERTIFICATE

```
                            050729A.TXT
 2
 3    DOCKET NO.:      EEOC No. 100-2004-00119X
 4                     Agency No. 1K-206-0004-03
 5    CASE TITLE:      James Harper v. USPS
 6    HEARING DATE:    July 29, 2005
 7    LOCATION:        Washington, D.C.
 8
 9              I hereby certify that the proceedings and
10    evidence are contained fully and accurately on the
11    tapes and notes reported by me at the hearing in the
12    above case before the United States Postal Service.
13
14
15                              Date:  July 29, 2005
16
17
18                              Bernadette Herboso
19                              Official Reporter
20                              Heritage Reporting Corporation
21                              Suite 600
22                              1220 L Street, N.W.
23                              Washington, D.C.  20005-4018
```