EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
Washington Regional Office

| | |
|---|---|
| James Harper,<br>    Complainant<br><br>v.<br><br>Jack Potter,<br>    Agency | EEOC No. 100-2004-00119X<br>Agency No. 1K-206-0004-03 |

## AGENCY'S RESPONSE TO EEOC ORDER ON DECISION ON THE MERITS WITHOUT A HEARING

In this case, Complainant's claim of retaliation arises from a letter of warning in lieu of a 14 day suspension dated October 4, 2002. Complainant's retaliation claim lacks merit as the alleged discriminating official had no prior knowledge of Complainant's prior EEO activity and because there is no temporal nexus between the alleged retaliatory act and Complainant's prior EEO activity. Accordingly, the EEOC should enter judgment against Complainant.

## STATEMENT OF FACTS

Complainant was employed as a mail processing clerk at the Suburban Maryland Processing and Distribution Center and was supervised by Joyce Hembry. ROI at 1.[1] In October 2, 2002, the Complainant initiated the first of two EEO complaints about Ms. Hembry.

The first complaint was filed on October 2, 2002. ROI at 69. That complaint alleged that Hembry accused complainant of not keeping his feeder loaded at all times like the other employees. ROI at 69.

---

[1] References to the Report of Investigation will be cited as "ROI at _____".

The second complaint was filed on October 31, 2002 and alleges that on October 4, 2002, Hembry issued a letter of discipline to Complainant in retaliation for Complainant's filing of his October 2nd EEO complaint. ROI at 81. Specifically, Complainant alleges that on October 2, 2002, while leaving the EEOC office, Complainant saw and spoke with District Manager Timothy Haney. Id. at 6. According to Complainant, he told Mr. Haney about the problems that Complainant was having with Ms. Hembry. ROI at 6. Complainant further alleges that Haney stated that he would talk to Messrs. Daryl Martin and Melvin Tucker about Ms. Hembry. Id. Two days after this conversation, Hembry issued Complainant a letter of warning in lieu of a 14 day suspension for failing to follow instructions. ROI at 35.

The letter of warning was issued for legitimate business purposes. Complainant had a history of not engaging in productive work. Hembry Dec. ¶2.[2] On numerous occasions, Hembry found Complainant talking on his cell phone and not working at his designated work station. Id. Hembry has made repeated attempts correct this behavior. First, she held a pre-disciplinary meeting with Mr. Harper and his union representative where she stressed to Complainant the importance of engaging in productive work. Id. He ignored the instructions during this meeting. Id. In July 2002, she issued him a 7 day suspension for not following my instructions of engaging in non-productive activities while at work. Id.

---

[2] References to the Hembry Declaration, which is attached hereto, will be cited as "Hembry Dec ¶ ___."

On October 2, 2002, Hembry noticed that Mr. Harper was sitting at the supervisor's desk and not at his assigned duty station working the mail. Hembry Dec. ¶3. Upon inquiry, she learned that Mr. Harper had on his own initiative decided to leave his work station to complete a Form 1767, a safety form used to report a hazard or unsafe practice or condition. Id. She told him that he should prepare his form while on his break and instructed him to return to work. Id. Because he once again ignored her repeated instructions that he has to continue to engage in productive work while on the clock, Hembry issued the October 4th letter of warning in lieu of 14 day suspension. Id.

Hembry attests that at the time that she issued the October 4th disciplinary letter, she was not aware of Hembry's EEO activity. Hembry Dec. ¶¶ 4-5.

**ARGUMENT**

The standards for summary judgment are well established. Summary judgment must be granted for the moving party if the pleadings, depositions, answers to interrogatories and affidavits on file show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. In determining whether a genuine issue of material fact exists, the evidence is viewed through a prism of the substantive evidentiary burden that would apply at the trial of the merits. Anderson v. Liberty Lobby, 477 U.S. 242 (1986). In other words, where, as in this case, the Agency moves for summary judgment, it is incumbent on the Complainant to come forward with specific facts

showing that there is a genuine issue for trial. Celotex v. Catrett, 477 U.S. 317 (1986).

Complainant cannot simply rest on mere allegations of discrimination, denials, or on the hopes that at trial evidence put on by the moving party may simply be disbelieved. Celotex, supra. Instead, he must support his allegations with affidavits or other competent evidence, demonstrating sufficient facts upon which a reasonable jury, in light of Complainant's evidentiary burden, can properly proceed to find a verdict for Complainant. Celotex, supra. Thus, to avoid summary judgment, Complainant must satisfy each element of the burden shifting McDonnell Douglas test. Phillips v. Halladay Property Services, 937 F. Supp. 32 (D.D.C. 1996).

In this case, Complainant raises only a retaliation claim. To establish a prima facie case of retaliation, the complainant must prove four elements: (1) he engaged in prior EEO activity, (2) the agency was aware of the prior activity, (3) the complainant suffered an adverse employment action, and (4) there is a nexus between the prior EEO activity and the adverse employment action. Reese v. Mineta, 2002 EEOPUB Lexis 2188 (2002). Thus, two essential elements to a retaliation claim are (1) prior knowledge and (2) nexus.

To establish prior knowledge, the Complainant must show that the alleged discriminating official had prior knowledge of complainant's EEO activity. Ciccone v. Henderson, 1999 EEOPUB Lexis 4713 (1999)(prima facie case not shown where employee fails to show that the agency official had prior knowledge of EEO activity); Mehta v. Evans, 2001 EEOPUB Lexis 5699 (2001).

Complainant fails to meet this burden. The unrebutted evidence of record clearly shows that Ms. Hembry did not have any prior knowledge of Complainant's EEO filing prior to the issuance of the October 4th letter of warning.

Even assuming that Complainant could establish a prima facie case of retaliation, Complainant does not and cannot establish that the Agency's actions were pretextual. Complainant has a history of not working productively. He has been repeatedly reprimanded for engaging in non-productive activities while at work. He has been reprimanded for talking on his cell phone while at work. He has been reprimanded for not feeding his mail properly. The October 4th letter is just the latest in a series of incidents where Complainant chose to leave his work area to pursue his own endeavors. The issuance of discipline under these circumstances was not retaliatory; it was just good business practices.

## CONCLUSION

For the foregoing reasons, the Commission should grant the Agency's motion for summary judgment.


Respectfully Submitted,

Andrew A. Chakeres
United States Postal Service
Capital Metro Law Office
Suite 650
400 Virginia Ave., SW
Washington, DC 20024-2730

Agency Representative

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Washington Regional Office**

| | |
|---|---|
| James Harper,<br>    Complainant<br><br>v.<br><br>Jack Potter,<br>    Agency | EEOC No.<br>Agency No. 1k-206-0004-03 |

**DECLARATION OF LYDIA HEMBRY**

I, Lydia Hembry, declare under penalty of perjury that based on my personal knowledge, the following is true and correct.

1. I am employed as the supervisor of distribution operations for the United States Postal Service. In October 2002, I supervised James Harper, the Complainant.

2. Mr. Harper has had a history of leaving his work area and engaging in non-productive work while on the clock. On numerous occasions, I have found him talking on his cell phone and not working at his designated work station. I have made repeated attempts correct this behavior. First, I held a pre-disciplinary meeting with Mr. Harper and his union representative. The purpose of the meeting was to impress on him the importance of engaging in productive work. He ignored my instructions during this meeting. In July 2002, I issued him a 7 day suspension for not following my instructions of engaging in non-productive activities while at work. Another incident occurred on October 2, 2002.

3. On October 2, 2002, Mr. Harper was under my supervision. On that date, I was out on the workroom floor when I noticed that Mr. Harper was sitting at the supervisor's desk and not at his assigned duty station working the mail. Upon inquiry, I learned that Mr. Harper had on his own initiative decided to leave his work station to complete a Form 1767, a safety form used to report a hazard or unsafe practice or condition. I told him that he should prepare his form while on his break and instructed him to return to work. Because he once again ignored my repeated instructions that he has to continue to engage in productive work while on the clock, I issued the October 4th letter of warning in lieu of 14 day suspension.

4. At the time that I issued the October 4th letter of warning, I did not know that Mr. Harper had filed an EEO against me. I subsequently learned about the EEO during a meeting among Mr. Harper, Mr. Tucker and myself. At this meeting, Mr. Harper had informed Mr. Tucker and me that he had already filed an EEO complaint against me. Mr. Tucker adjourned the meeting, saying that we would resolve Mr. Harper's issues through the EEO process.

5. In my original EEO affidavit, I stated that I recalled the meeting, did not recall the date of the meeting, and guessed that the meeting was in September 2002. At the time that I prepared the affidavit, I did not have any materials to assist me in pinpointing the date. Since then, I have learned that the October 4th letter of warning incident occurred at 2:20 am on October 1. Later that day, Mr. Harper filed his EEO complaint until

October 1, 2002. The letter was issued at 4:57 am on October 4, 2002. Based on these events, I am convinced that the meeting with Mr. Harper did not occur until after the issuance of the October 4, 2002 letter.

I declare under penalty of perjury that the following was true and correct.

*Lydia Hembry*
6-3-04

## CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of June, 2004, I served by, first class mail, postage prepaid, a copy of the Agency's Response to Notice of Intent to Issue a Decision Without A Hearing to Complainant at the following address:

James Harper
16000 Dusty Lane
Accokeek, MD 20607-9516