**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                        )
JAMES HARPER                            )
                                        )
                    Plaintiff,          )
                                        )
    v.                                  )Civil Action No. 06-0161(RMC)
                                        )
JOHN E. POTTER,                         )
Postmaster General,                     )
U.S. Postal Service                     )
                                        )
                    Defendant.          )
_____)

**REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Plaintiff filed suit alleging retaliation for prior protected activity when, on October 4, 2002, he received a letter imposing a 7-day suspension.  This letter was rescinded as a result of a Union grievance filed by plaintiff.  The defendant filed a motion for summary judgment on the grounds that the complaint was untimely, that plaintiff failed to establish a prima facie case of retaliation, and failed to establish pretext.[1]

Plaintiff opposes defendant's motion on the grounds that under Burlington Northern & Sante Fe Ry. Co. v. White, 548 U.S. __, 126 S. Ct. 2405 (2006) plaintiff has established a prima facie case of retaliation.  Moreover, he argues that he has submitted sufficient evidence of pretext that permits a reasonable fact-finder to decide in his favor.

_____

[1] The defendant now agrees that plaintiff's complaint was timely and withdraws this defense.

### A.    Plaintiff Fails to Establish a <u>Prima Facie</u> Case

Plaintiff's reliance on <u>Burlington Northern</u> is misplaced. Plaintiff observes that <u>Burlington Northern</u> expressly rejects the position that a rescinded action cannot be the basis of a retaliation claim and that it is the "fear of economic retaliation" that makes a rescinded suspension actionable.  <u>Id.</u> at 2418.[2]

Here, however, the 7-day suspension did not and could not create the "fear of economic retaliation" present in <u>Burlington Northern</u>.  The Union contract, which became effective in November 2001 and was in effect at all relevant times at issue, specifically provides that a bargaining unit employee such as plaintiff does not sustain any loss of pay for a proposed suspension of 14-days or less (Ex. 1, p. 79).  Discipline at the United States Postal Service (USPS) is designed to be corrective in nature, rather than punitive (<u>Id</u>. at 78).  This is amply demonstrated by Article 16, Section 4  which states in reference to suspension of 14-days or less:

> ". . . A suspended employee will remain on
> duty during the term of suspension with no loss
> of pay . . ."

In <u>Burlington Northern</u>, plaintiff was "suspended without

---

[2] The defendant concedes that there is a factual issue as to whether Ms. Hembry had knowledge of plaintiff's threatened EEO complaint when she issued the 7-day suspension.

pay" for thirty-seven days.  However, the company's internal grievance procedure concluded that the plaintiff had not been insubordinate, which had been the basis of suspension.  Prior to this determination, plaintiff and her family had to live for 37 days without pay and without knowing if she would still have a job.  Id. at 2409.  In the instant case, there was never an actual or threatened suspension without pay.  There was never a threat that plaintiff would not have a job.  During a 7-day suspension, a USPS employee remains at work and is paid.  A no time off - no loss of pay suspension is a form of progressive discipline to correct offending behavior.  It serves as a justification for further discipline only if an employee engages in further misconduct.  It remains in an employee's file for two years.  Id.

The standard set forth in Burlington Northern requires plaintiff to show that a reasonable employee would have found the challenged action "materially adverse," which in this context means it might well have dissuaded a reasonable worker from making or supporting a charge of discrimination."  Id. at 2415 citing Rochon v. Gonzales, 438 F.3d 1211, 1219 (D.C. Cir. 2006) (quoting Washington v. Illinois Dept. of Revenue, 420 F.3d at 662).  The Supreme Court recognized, however, that it was "important to separate significant from trivial harms."  In Burlington Northern, the plaintiff and her family had to live for 37 days without a paycheck, not knowing if she would have a job. The Supreme Court observed that many a reasonable employee would

3

find a month without a paycheck to be a serious hardship.  Id. at 2417.  As the Court recognized "context" matters.  An act that would not be significant in some  circumstances may be significant in others.  Id. at 2415-2416.  An indefinite suspension "without pay" might well act as a deterrent to an employee.  However, an employee who receives a 7-day suspension without the fear of loss of pay or time at work (or even potential overtime) simply does not meet the objective  "material adversity" standard required by the Supreme Court especially when that non-monetary standard is later rescinded.

Plaintiff fails to demonstrate that a reasonable employee under his circumstances would be deterred from bringing a charge of discrimination.  Thus, plaintiff has not established a prima facie case.

**B.    Plaintiff Fails to Demonstrate Pretext**

Plaintiff asserts that Ms. Hembry's concerns about plaintiff's performance are merely pretext.  Plaintiff claims that the prior letter of warning (which had been rescinded unbeknownst to Ms. Hembry) is listed as the only factor in plaintiff's past record used by Ms. Hembry to impose discipline and, thus the concerns with his past performance constitute a post hoc rationalization.  The 7-day suspension is clear on its face that the reference to his past record refers to plaintiff's past disciplinary record, not to his performance.  Ms. Hembry references the letter of warning "in addition" to the events that evening which she adequately describes in detail.

The evidence is clear that Ms. Hembry was not satisfied with plaintiff's productivity throughout the evening.  She repeatedly urged plaintiff to do his work (EEO Tr., pp. 95-97, 99, 104, 111; ROI, Ex. 3, p. 35).  Moreover, plaintiff complains that Ms. Hembry had repeatedly told him to work up to standards (EEO Tr., pp. 22-23).  Significantly, prior to the evening in question, according to the plaintiff, Ms. Hembry repeatedly advised plaintiff that he was not working up to expectations or standards almost on a daily basis.  Plaintiff even confronted her about her complaints (EEO Tr., p. 33).  It was Ms. Hembry's frequent expression of her concerns about plaintiff's performance and productivity that precipitated his prior EEO complaint, as well as his visit to the union office at the beginning of his tour on the night in question.  (ROI, Ex. A, p. 11).  There is simply no evidence of <u>post</u> <u>hoc</u> justification.  The evidence overwhelmingly demonstrates that Ms. Hembry was not satisfied with plaintiff's performance even prior to the night in question (ROI, p. 100; pp. 104-105; EEO Tr., pp 22-23).[3]

There is no evidence that Ms. Hembry's complaints about plaintiff's lack of productivity and unresponsiveness are " . . . an open invitation to arbitrariness and cover for an illegitimate motive."  Contrary to plaintiff's assertion, Ms. Hembry's articulation of her legitimate reasons for imposing discipline

---

[3] Plaintiff's prior supervisor also had problems with plaintiff's performance.  The rescinded letter of warning was changed to reflect an "official discussion" related to his performance (ROI, p. 100).

are sufficient to entitle the employer to summary judgment.  The

employer's burden is only one of production. See Texas Department

of Community Affairs v. Burdine, 450 U.S. 248, 254

(1981)(employer "need not persuade the Court that it was actually

motivated by the proffered reason"); see also St. Mary's Honor

Society v. Hicks, 509 U.S. 502, 509 (1993)(The determination that

a defendant has met its burdens of production (and has thus

rebutted any legal presumption of intentional discrimination) can

involve no credibility assessment").

Plaintiff fails to demonstrate pretext by asserting that he

did follow Ms. Hembry's instructions and ceased filling out a

form 1767 and returned to work.  It is clear that Ms. Hembry's

instructions were to return to work and "produce" (See ROI, Ex.

3, p. 35 ("your [sic] continued disregard of official

instructions to be gainfully employed is unacceptable . . .")).

Plaintiff produced no evidence to refute Ms. Hembry's complaints

about his lack of productivity.  At best, plaintiff produced

evidence that he went back to the sorting machine.  He produced

no evidence that he actually worked once he got there.  The

contemporaneous documentary evidence refutes his claim that the

sorting machine was not working and no one was around during

significant portions of the evening (see EEO Tr., pp. 101, 119-

121).

Finally, plaintiff's general denial that he was not using a

cell phone that night cannot defeat summary judgment.  A

plaintiff may not defeat a motion for summary judgment by mere

denials. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248
(1986).  When asked about his cell phone use on the night in
question, plaintiff responded that "there is no cell phone in our
work area" (EEO Tr., p. 51).  Plaintiff admits that he had a
discussion with Ms. Hembry about his use of a cell phone on the
workroom floor, but "can't recall the date."  Despite not
recalling the date of the discussion, he insists it was not the
night in question (EEO Tr., pp. 51-52).  Interestingly, he does
not actually deny that he used a cell phone that evening, only
that he did not have a discussion about it (<u>Id</u>.).

 Plaintiff's belief that Ms. Hembry was retaliating against
him for speaking about USPS's handling of the anthrax matter and
because he was the only male sorter fails to raise a genuine
issue of fact for trial.  Plaintiff cannot show pretext based
merely on personal speculation of discriminatory motive or
intent. <u>Green v. Dalton</u>, 16 F.3d 647, 675 (D.C. Cir. 1999).  The
plaintiff has failed to present objective evidence that
undermines the defendant's proffered explanation for its action
and/or provides independent evidence of discriminatory statements
or attitudes on the part of the employer. <u>Aka v. Washington
Hospital Center</u>, 156 F.3d 1284, 1288 (1988)(<u>en</u> <u>banc</u>).[4]

 Even if one was to conclude that plaintiff raised an issue
of fact concerning his use of the cell phone on the workroom

---

 [4] The record is devoid of any evidence of discriminatory
attitude.  Ms. Hembry has filed an EEO complaint in the past.
Her husband is a member of Brentwood Exposed (Tr. 113:13, 25, and
114:1-3).  This weighs against harboring any discriminatory
motive or attitude.

floor, this Circuit has made clear that this alone would not defeat defendant's motion for summary judgment.  As the D.C. Circuit has stated:

> "There may be no legitimate jury question as to discrimination in a case in which a plaintiff has created only a weak issue of fact as to whether the employer's explanation is untrue, and there is abundant independent evidence in the record that no discrimination has occurred."

Id. at 1291.

The plaintiff has failed to produce sufficient evidence that would permit a reasonable fact-finder to conclude that he was the victim of retaliation.  There is abundant evidence in the record that plaintiff's lack of productivity was a long-standing concern and that no retaliation occurred.

**CONCLUSION**

For the foregoing reasons, defendant's motion for summary judgment should be granted.

Respectfully submitted,


__/s/_____
KENNETH L. WAINSTEIN, D.C. BAR # 451058
United States Attorney


__/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


_____/s/_____
DIANE M. SULLIVAN, D. C. BAR # 12765
Assistant United States Attorney
Judiciary Center Building
555 Fourth Street, N.W.
Room E4919
Washington, D.C. 20530
(202) 514-7205