## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JAMES HARPER,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 06-161 (RMC)** |
| ) | |
| **JOHN E. POTTER, Postmaster General,** ) | |
| **United States Postal Service,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |
| ) | |

## MEMORANDUM OPINION

Plaintiff James Harper brought this suit against John E. Potter, Postmaster General, in his capacity as representative of the United States Postal Service ("USPS"), alleging a single count of retaliation in violation of Title VII, 42 U.S.C. §§ 2000e *et seq*. The retaliation claim arises from a 7-day suspension that was issued against Mr. Harper and that was later rescinded. USPS moves for summary judgment. Because the 7-day suspension did not involve actual time away from work or any loss of pay and because it was rescinded and expunged from Mr. Harper's personnel record, it was not "materially" adverse. Further, the suspension would not have dissuaded a reasonable employee from making or supporting a charge of discrimination. Accordingly, Mr. Harper has failed to present a prima facie case of retaliation, and USPS's motion for summary judgment will be granted.

## I.  FACTUAL BACKGROUND

Mr. Harper was employed as a mail processing clerk with USPS in Gaithersburg, Maryland. Pl.'s Ex. 1, Equal Employment Opportunity Office's Report of Investigation ("ROI") at 69. His supervisor was Ms. Lydia Hembry. *Id*. On October 4, 2002, Ms. Hembry issued a 7-day suspension against Mr. Harper. *Id*. at 35. The suspension stated as follows:

> On October 1, 2002 at approximately 2:20 a.m., you were observed by me standing in the work area and not performing your duties. You were assigned to work on Feeder 3 at that time, and there was mail available to you. I walked over to you and instructed you to load your ledge. At approximately 3:30 a.m., I observed you sitting at the desk filling out a form 1767 [Report of Hazard, Unsafe Condition or Practice]. I instructed you again to go to your assignment and load the mail. You state to me that you were filling out a 1767 form. Again, I emphasized to you the need for you to go to work. I asked you whether or not there was an immediate hazard or safety concern in the area in which you were assigned (Feeder 3) and you replied "No." You advised me that you would go to your assignment but would note on the 1767 that I had not allowed you time to fill it out. You [sic] continued disregard of official instructions to be gainfully employed is unacceptable and will not be tolerated.
>
> In addition, the following elements of your past record have been considered in arriving at this decision:
>
> 07-26-02        You were issued a Letter of Warning for Failure to Follow Official Instructions.[1]

*Id*.

A suspension like the one issued in this case is part of the USPS's progressive discipline policy. Under the terms of the Collective Bargaining Agreement between USPS and the American Postal Workers Union, AFL-CIO, employee discipline starts with an official discussion and progresses to a letter of warning, a suspension of less than fourteen days, a suspension of more than fourteen days, and finally, discharge. Def.'s Mem. at 7; Def.'s Sept. 29, 2006, Notice of Filing, Ex. 1, Collective Bargaining Agreement ("CBA"), Art. 16.1-16.5. With regard to suspensions of less than fourteen days, the CBA provides:

> [T]he employee against whom disciplinary action is sought to be initiated shall be served with a written notice of the charges against the employee and shall be further informed that he/she will be suspended after ten (10) calendar days during which ten-day period the employee shall remain on the job or on the clock (in pay status) at the option of the Employer. However, if a timely grievance is initiated, the effective date of the suspension will be delayed until disposition of the grievance, either by settlement or an arbitrator's

---

[1] The parties agree that the July 26, 2002, Letter of Warning should not have been used as a basis for the 7-day suspension because it had been rescinded on August 4, 2002. Mem. in Support of Def.'s Mot. for Summ. J. ("Def.'s Mem.") at 7; Pl.'s Mem. of Points and Authorities in Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Mem.") at 3.

> final and binding decision.  The employee shall remain on the job or
> on the clock (in pay status) at the option of the Employer.

CBA, Art. 16.4.  In other words, for a 7-day suspension like the one at issue here, the employee may

remain on the job and in pay status if USPS so chooses.  Here, USPS did not reduce Mr. Harper's

pay nor did it require Mr. Harper to take time off.[2]

A record of discipline ordinarily remains in an employee's personnel file for two

years and may serve as a justification for further discipline if the employee engages in further

misconduct.  The CBA provides:

> The records of a disciplinary action against an employee shall not be
> considered in any subsequent disciplinary action if there has been no
> disciplinary action initiated against the employee for a period of two
> years.
>
> Upon the employee's written request, any disciplinary notice or
> decision letter will be removed from the employee's official
> personnel folder after two years if there has been no disciplinary
> action initiated against the employee in that two year period.

Id., Art. 16.10.  In this case, Mr. Harper grieved the 7-day suspension through the union, and it was

rescinded in a grievance resolution on November 13, 2002.  ROI at 37.

Two days prior to the issuance of the 7-day suspension, Mr. Harper had filed an EEO

complaint regarding Ms. Hembry's conduct during the September 30/October 1, 2002, night shift.

Id. at 69.  Mr. Harper's EEO complaint alleged that Ms. Hembry treated him differently than she

treated female employees, thereby discriminating against him based on his gender.[3]  Id.  The EEO

_____

[2] However, Mr. Harper never returned to work after October 4, 2002, the date of the 7-day suspension.  He alleges that after he received the suspension, he experienced physical manifestations of extreme anxiety and went to the hospital.  Pl.'s Mem. at 4.  A doctor ordered Mr. Harper to stay away from work for two days, he was already scheduled to be out for two more, and then another doctor ordered him to stay away from work for another 10 days.  Id.  Since that time, he was diagnosed with severe emotional harm, and he has been unable to work.  Id.

[3] Mr. Harper believes that Ms. Hembry harassed him because he is male and because he participated in "Brentwood Exposed."  Pl.'s Mem. at 2.  Brentwood Exposed is a group that sought to sue USPS for perceived injustices in the way USPS dealt with the anthrax crisis at the Brentwood Processing and Distribution Center.  Def.'s Mem. at 2.  Mr. Harper believes that postal employees, who are mostly African-American, were left to work at Brentwood as a test of the effects of anthrax on humans, while white employees on Capital Hill were evacuated from the anthrax exposure area

complaint alleged that Ms. Hembry "is always treating me about my work performance" and that she unfairly accused him of not keeping his feeder loaded on the flat sorter machine when other, female, employees kept their feeders loaded at all times.[4]  *Id.*

Mr. Harper alleges that Ms. Hembry issued the 7-day suspension in retaliation for his EEO activity two days earlier.  USPS filed a motion for summary judgment arguing that the suspension was not materially adverse because Mr. Harper suffered no consequences from it and that the suspension would not have dissuaded any reasonable person from engaging in EEO activity.  The motion for summary judgment was fully briefed, and the parties presented oral argument on the motion at a hearing on September 25, 2006.

## II.  STANDARD OF REVIEW

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *see also Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995).  Moreover, summary judgment is properly granted against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In ruling on a motion for summary judgment, a court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true.  *Anderson*, 477 U.S. at 255.  A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position.  *Id.* at 252.

---

and were provided with treatment by military doctors.  *Id*. at 2-3; Pl.'s Mem. at 2.

[4] The parties dispute whether Ms. Hembry was aware of Mr. Harper's EEO activity.  Def.'s Reply at 2 n.2.

## III.  ANALYSIS

Title VII prohibits an employer from retaliating against an employee because he "has opposed any practice made an unlawful employment practice by this title, or because [he] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title." 42 U.S.C. § 2000e-3(a).  To establish a prima facie case of retaliation,[5] a plaintiff must show that: 1) he engaged in protected activity; 2) he suffered an adverse action; and 3) a causal connection exists between the protected activity and the adverse action.  *Holcomb v. Powell*, 433 F.3d 889, 901-02 (D.C. Cir. 2006).

An "adverse action" supporting a retaliation claim is not limited "to those that are related to employment or occur at the workplace." *Burlington Northern & Santa Fe Ry. v. White*, 126 S. Ct. 2405, 2409 (2006).  However, a plaintiff must show that the employer's actions "would have been materially adverse to a reasonable employee." *Id*.  "The anti-retaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Id*. at 2414.  The employer's action must be "materially" adverse because the statute protects employees from significant harms and does not protect an employee from "those petty slights or minor annoyances that often take place at work and that all employees experience." *Id*. at 2415.

Further, to support a claim for retaliation, "an employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Id*.  An objective, "reasonable person" standard applies. *Id*.  "[T]he significance of any given act of retaliation will often depend upon the particular circumstances.  Context matters." *Id*.; *see, e.g., Gardner v. Dist. of Columbia*, No. 04-637, 2006 WL 2423333, at *4 (D.D.C. Aug. 23,

---

[5] If a plaintiff establishes a prima facie case, then the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for the employer's action. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  If the defendant meets this burden, then the plaintiff must have the opportunity to prove, by a preponderance of the evidence, that the legitimate reasons offered by the employer were not its true reasons, but were a "pretext" for discrimination. *Burdine*, 450 U.S. at 253; *McDonnell Douglas*, 411 U.S. at 804.

2006) (plaintiff's allegation that her superiors treated her "badly" did not rise to the level of adverse action under the anti-retaliation statute).

The 7-day suspension in this case was not materially adverse.  Because USPS did not require Mr. Harper to be absent from work and did not reduce his pay, the 7-day suspension was not a suspension at all.  Moreover, the 7-day suspension imposed upon Mr. Harper on October 4, 2002, was rescinded and expunged from Mr. Harper's employment record on November 13, 2002, just over one month later in response to his grievance.  The suspension bore no consequences, and it remained part of Mr. Harper's personnel record for the briefest of periods.  Under the unique circumstances of this case, no reasonable employee would have been dissuaded from making or supporting a charge of discrimination by the imposition of this 7-day suspension.  *Burlington*, 126 S. Ct. at 2409.

## IV.  CONCLUSION

As explained above, USPS's motion for summary judgment [Dkt. #15] will be granted, as Mr. Harper failed to present a prima facie case of retaliation.  A memorializing order accompanies this Memorandum Opinion.

Date:   October 5, 2006                    _____/s/_____
                                         ROSEMARY M. COLLYER
                                         United States District Judge